UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IVORY BERUBE,<br><br>      Petitioner,<br><br>  v.<br><br>JEFFREY UTTECHT,<br><br>      Respondent. | CASE NO. C17-288-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

  Petitioner Ivory Berube is a state prisoner currently incarcerated at Coyote Ridge Corrections Center. He filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his 2009 King County Superior Court convictions and sentence for first degree assault and unlawful possession of a firearm. Dkt. 15, Exhibit 1, Judgment and Sentence, *State v. Berube*, King County Cause No. 08-1-0515-8. The sole ground raised for relief in Mr. Berube's federal habeas petition is "[t]he trial court's refusal to allow Berube to speak at the hearing reconstructing his trial testimony deprived Berube of due process." Dkt. 8, at 5.

  The parties agree Mr. Berube's habeas petition is untimely, and that the ground for relief is unexausted, and defaulted. Respondent accordingly contends the petition should be dismissed because Mr. Berube filed the petition after the federal statute of limitations had run. Dkt. 14, at 7, 9-15. Alternatively, respondent contends the petition should be dismissed because Mr. Berube's

REPORT AND RECOMMENDATION - 1

1  claims are unexhausted and procedurally defaulted and he cannot show cause and prejudice or

2  actual innocence to excuse his procedural default. *Id.* Mr. Berube disagrees arguing there are

3  equitable reasons to toll the statute of limitations and that he has shown cause and prejudice to

4  excuse the default. Dkt. 28.

5  After careful review of the petition, opposition, and balance of the record, the Court

6  concludes Mr. Berube has failed to establish grounds to equitably toll the statute of limitations.

7  The federal habeas petition is time-barred under 28 U.S.C. § 2244(d) and the Court may deny the

8  petition without reaching the merits of the petition. Even if the Court found the statute of

9  limitations should be tolled for equitable reasons, Mr. Berube has failed to show cause and

10  prejudice, that would allow the Court to consider his unexausted and defaulted claim.

## BACKGROUND

**A.    Statement of Facts**

The Washington Court of Appeals summarized the facts underlying Mr. Berube's conviction as follows:

> On the night of July 11, 2008, Tanisha Barquet and Kyla Jackson went to Thompson's Point of View, a Seattle nightclub located at 23rd and Union. Outside the nightclub, Ivory Berube's brother Emory approached Barquet and accused her of being involved in the shooting of his friend "Clips."
>
> As Barquet later testified, Emory threatened her, called her names, and then made several calls on his cell phone, telling her he was going to call Clips. Barquet decided to leave. Before she did so, she saw Clips and Berube join Emory. Berube put something "in his waistband." He approached her and noticed the "Ms. Barquet" tattoo on her arm. He asked her if she was a Barquet, and remarked that he had grown up with her family. His manner was not hostile or threatening.

Barquet and Jackson left Thompson's and visited two other bars in the area. Eventually Barquet joined another friend, Alysha Johnson, and they drove to Waid's, a Haitian restaurant near Jefferson Street and 12th Avenue. Waid's was closing, and people were outside in the street, including the Berube brothers.

The Waid's security video shows the brothers noticing Barquet's arrival. They separate, and the crowd draws away. Berube steps into the street and makes a motion as if racking a handgun. As Emory yells at Barquet, Berube moves out of camera range in Ba

rquet's direction. Then Barquet runs past Waid's in the other direction and goes out of camera range, and people run back inside Waid's. Two minutes later, police arrive.

Barquet's memory of what happened is hazy. She remembers "[a] lot of commotion, a lot of people yelling" as she crossed the street after getting out of Johnson's car. She heard a gunshot and felt pain in her head. She turned around and saw Berube about six or eight feet away, pointing a gun at her. She ran, and Berube shot her in the leg. She suffered life-threatening wounds to a vein and her femoral artery, and her ear had to be reconstructed.

Joseph Burgess was driving on Jefferson Street and heard the gunfire. He parked and was attempting to call 911 when he saw someone "running with a purpose" past his car. He saw "something going on at the waistband" of this individual, like a "gun, or something shaped like a banana."

Police responding to the scene were advised the suspected shooter was a black male in his 20s wearing a white T-shirt, white baseball cap, black jeans and possibly wearing glasses, running north on 13th Avenue. Officers stopped a car occupied by Charles Justice a few blocks southeast of the scene. Justice attempted to flee on foot but was subdued by a stun gun. Police later found two semiautomatic weapons in the car.

On July 14, 2008, Detective James Cooper showed Barquet a photomontage that included Justice's photograph. Barquet stated she knew Justice and he was not the person who shot her. Shown two more photomontages, she identified Emory as the person who had confronted her outside Thompson's, and Berube as the person who shot her. Burgess also picked Berube from a photomontage as the person who ran past his car, though he could not identify him with certainty.

REPORT AND RECOMMENDATION - 3

On July 17, 2008, police arrested Emory. The next day, Emory made several phone calls to Berube from the jail. Calls from the jail are recorded. Among other things, they talked about the possibility of Emory's arrest being the result of an informant talking to police, about the officers telling Emory they had seen the Waid's video and knew he was not the shooter, and about Berube being "in the wind." Berube said, "I'm gone tonight."

Berube took a bus to New Bedford, Massachusetts. He was arrested there at his mother's house on July 28, 2008.

Detectives advised Berube of his *Miranda* rights, and Berube acknowledged he knew why they were questioning him. He denied knowing or shooting Barquet. He also denied fleeing Seattle, and claimed his trip to New Bedford had been discussed for months.

He was not at first forthcoming. But eventually Berube acknowledged he was at Thompson's Point of View with his brother the night of the shooting. He said he did not "remember" talking to Barquet there. He also eventually admitted being at Waid's, and said he saw the shooting and knew who shot Barquet. When asked the name of the shooter, however, he responded, "That's not how I roll. I'm not down like that." He became agitated, told detectives they "didn't have anything on him and that he'd see [them] in court," and remarked that police "may have witnesses now, but he wanted to see who would actually follow through at the time of trial and testify against him and his brother."

Berube was charged with first degree assault while armed with a firearm and first degree unlawful possession of a firearm.

At trial, Barquet testified she had no doubt Berube was the person who shot her. Joseph Burgess testified that Berube looked like the man who had run past him. The detectives testified to Berube's statements. The jurors saw the video and heard the taped conversations between Berube and his brother in the jail.

In the defense case, Berube's mother, Deborah Berube, testified that Berube had told her he had had drinks with Barquet the night of the shooting: "She had some bottles of liquor in the back of her car, and they were drinking." Ms. Berube also testified that she had not seen her son for 13 years, and that she and her son had been talking for several months about his visit to New Bedford.

REPORT AND RECOMMENDATION - 4

> Berube took the stand. He testified that on July 11, he and Emory were at Thompson's Point of View, where he spoke cordially with Barquet and drank vodka with her in Kyla Jackson's car. He knew that Emory argued with Barquet at Thompson's and he saw them exchanging insults later outside Waid's. When he heard the shots, he ran down the street and got a ride home. He also testified that he knew people who were present at the time of the shooting, but refused to provide their names and would not name the person who drove him home. He denied fleeing to Massachusetts to avoid arrest.
>
> The jury found Berube guilty as charged.

Dkt. 15, Exhibit 2, at 1-6, Opinion, *State v. Berube*, Court of Appeals Cause No. 63579-4-I.

**B.     State Court Procedural History**

Mr. Berube appealed his conviction to the Washington Court of Appeals. The Washington Court of Appeals affirmed the convictions and sentence on October 8, 2012. Dkt. 15, Exhibit 2, *State v. Berube*, Court of Appeals Cause No. 63579-4-I. Mr. Berube sought review in the Washington Supreme Court. The Washington Supreme Court denied review on September 4, 2013. *Id.*, Exhibit 8, Order, *State v. Berube*, Supreme Court Cause No. 88327-1. The Court of Appeals issued its mandate on Mr. Berube's direct appeal on October 2, 2013. *Id.*, Exhibit 9, Exhibit 20. Mr. Berube did not file a petition for writ of certiorari with the United States Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) ("[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's [28 U.S.C. § 2244(d)] one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires."). Mr. Berube did not raise the grounds raised in the instant federal habeas petition on his direct appeal. Dkt. 15, Exhibit 2, 8.

On September 21, 2014, Mr. Berube filed a personal restraint petition (PRP) directly in the Washington Supreme Court in which he raised the claim he presents in this habeas petition. Dkt. 15, Exhibit 10, Personal Restraint Petition, *In re Berube*, Supreme Court Cause No. 90807-9. The PRP was transferred to the Washington Court of Appeals which dismissed the PRP on January 20, 2015. *Id.*, Exhibit 11, Exhibit 12, Order of Dismissal, *In re Berube*, Court of Appeals Cause No. 72785-1-I. Mr. Berube then had 30 days, until February 19, 2015, to timely seek review by the Washington Supreme Court. RAP 13.5A(a), 13.5(a). Mr. Berube filed a letter with the Washington Court of Appeals, dated February 7, 2015, asking for an additional 30 days to file a motion for discretionary review at the Washington Supreme Court. *Id.*, Exhibit 13. By letter dated February 27, 2015, the Washington Supreme Court indicated that Mr. Berube's letter had been forwarded from the Washington Court of Appeals and received by the Washington Supreme Court on February 27, 2015. *Id.*, Exhibit 14. The letter indicated that Mr. Berube's request for extension was denied as he failed to demonstrate extraordinary circumstances to justify an extension of time. *Id.* Mr. Berube submitted an untimely request for discretionary review which was filed on March 5, 2015, in the Washington Supreme Court. *Id.*, Exhibit 15. By letter dated March 5, 2015, the Washington Supreme Court informed Mr. Berube that, due to its untimeliness, the motion had been placed in the file without any further action. *Id.*, Exhibit 16 at 2.[1]

---

[1] The Washington Court of Appeals did not issue a certificate of finality until May 8, 2015. However, a state collateral proceeding is only "'pending' for the purpose of tolling the federal statute of limitations under 28 U.S.C. § 2244(d)(2) for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.'" *Goncalves v. Stewart*, 18 F. App'x 580, 581–82 (9th Cir. 2001) quoting *Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir. 1999). Here, once Mr. Berube's time to seek review of his PRP dismissal in the Washington Supreme Court expired on February 19, 2015, his PRP was no longer pending. *Goncalves*, 18 F. App'x at 582. That is, because Mr. Berube's first PRP was no longer pending as of February 19, 2015, the collateral review proceeding was terminated and the federal statute of limitations began to run again regardless of when the Court of Appeals issued the certificate of finality.

REPORT AND RECOMMENDATION - 6

1     On July 15, 2015, Mr. Berube filed a second PRP directly in the Washington Supreme
2  Court. Dkt. 15, Exhibit 18, *In re Berube*, Supreme Court Cause No. 91346-3. The petition was
3  transferred to the Washington Court of Appeals which dismissed it as time barred under RCW
4  10.73.090. *See* RCW 10.73.090 ("No petition or motion for collateral attack on a judgment and
5  sentence in a criminal case may be filed more than one year after the judgment becomes final if
6  the judgment and sentence is valid on its face and was rendered by a court of competent
7  jurisdiction."); *Id.*, Exhibit 19, Exhibit 20, *In re Berube*, Court of Appeals Cause No. 74185-3-I.
8  Mr. Berube sought review by the Washington Supreme Court. *Id.*, Exhibit 21. The
9  Commissioner of the Washington Supreme Court denied review finding the PRP was time barred
10 and that Mr. Berube's claim was without merit. *Id.*, Exhibit 22. Mr. Berube moved to modify the
11 Commissioner's ruling. *Id.*, Exhibit 23. The Washington Supreme Court denied Mr. Berube's
12 motion on August 31, 2016. *Id.*, Exhibit 24. The Washington Court of Appeals issued a
13 certificate of finality on September 30, 2016. *Id.*, Exhibit 25. Mr. Berube then filed the instant
14 federal habeas petition on February 21, 2017. Dkt. 1, 8.

15    Respondent, in his answer to Mr. Berube's federal habeas petition, argues the petition is
16 untimely under 28 U.S.C. § 2244(d)(1) and, as such, should be dismissed. Dkt. 14. Mr. Berube
17 does not dispute that his federal habeas petition is untimely but argues that the statute should be
18 equitably tolled from February 19, 2015, (the date that marked the expiration of time to seek
19 review of his claim on his first PRP in the Washington Supreme Court) to February 21, 2017,

---

*Id.*; *Cf. Wixom v. Washington,* 264 F.3d 894 (9th Cir. 2001) (holding that, on direct appeal, it was the decision of the court of appeals affirming the conviction that terminated direct review, not the issuance of the mandate).

REPORT AND RECOMMENDATION - 7

1  (the date he filed his federal habeas petition). Dkt. 28, at 9-10. Mr. Berube contends the statute

2  should be equitably tolled for that period because he did not receive the letter from the

3  Washington Supreme Court denying his request for additional time to seek discretionary review

4  until after his time to do so had expired and he was thereby prevented from exhausting the claim

5  raised in the PRP (and in the instant petition) by presenting it to the Washington Supreme Court.

6  *Id.* Mr. Berube contends the "ripple effect" is that he "could not" file a federal habeas petition

7  that presented properly exhausted claims. *Id.* Mr. Berube further argues that he demonstrates

8  good cause for his failure to exhaust his habeas claim and prejudice from the alleged

9  constitutional violation sufficient to overcome his procedural default. *Id.*

10 **DISCUSSION**

11 **A.    The Petition is Barred Under the Statute of Limitations, 28 U.S.C. § 2244(d)**

12     The parties agree the habeas petition is untimely. Under 28 U.S.C. § 2244(d)(1), federal

13  habeas corpus petitions filed pursuant to 28 U.S.C. § 2254 by persons imprisoned under a state

14  court judgment are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). Under

15  28 U.S.C. § 2244(d)(1)(A), "[t]he limitation period shall run from . . . the date on which the

16  judgment became final by the conclusion of direct review or the expiration of the time for

17  seeking such review . . . ." The limitation period may run from a later date under the following

18  circumstances. First it may run from the date on which the impediment to filing an application

19  created by State action in violation of the Constitution or laws of the United States is removed, if

20  the applicant was prevented from filing by such State action. 28 U.S.C. § 2244(d)(1)(B). Second,

21  it may run from the date the United States Supreme Court recognizes a new constitutional right

22  that the Supreme Court makes retroactive to cases on collateral review. 28 U.S.C. §

23  2244(d)(1)(C). And third, it may run from the date the factual predicate of the claim presented

could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

For purposes of 28 U.S.C. § 2244(d)(1)(A), direct review generally concludes and the judgment becomes final either upon the expiration of the time for filing a petition for writ of certiorari with the Supreme Court, or when the Court rules on a timely filed petition for certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Mr. Berube appealed his judgment and sentence to the Washington Court of Appeals. The court affirmed the judgment and sentence on September 4, 2013. Mr. Berube then had 90 days, until December 3, 2013, to file a petition for writ of certiorari with the United States Supreme Court. Mr. Berube did not do so and, as such, the direct review process ended and Mr. Berube's judgment and sentence became final for purposes of 28 U.S.C. § 2244(d)(1)(A) on December 3, 2013, and the statute of limitations began to run that same day. 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 132 S. Ct. 641, 652-56 (2012); *Wixom v. Washington*, 264 F.3d 894, 897-98 (9th Cir. 2001).

The parties agree the statute of limitations period then ran for 291 days until Mr. Berube filed his first PRP on September 21, 2014. The parties further agree the limitations period was then tolled by the filing of his timely PRP, from September 21, 2014, until February 19, 2015, the date by which Mr. Berube could seek review in the Washington Supreme Court after the Court of Appeals, on January 20, 2015, dismissed the petition. RAP 13.4(a), Dkt. 15, Exhibit 12. Unless there was a basis to toll or extend the statute, as discussed below, the statute then began to run again from February 19, 2015, and expired 74 days later on May 4, 2015. The parties agree

REPORT AND RECOMMENDATION - 9

1  that Mr. Berube took no action until July 15, 2015, when he attempted to file a second PRP in

2  state court, which was dismissed as untimely. Even if Mr. Berube had time remaining on the

3  federal statute at this point, which he did not, the statute is not tolled by the filing of an untimely

4  PRP. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (filing of untimely state court application

5  for collateral review does not toll the statute of limitations for filing a federal habeas petition

6  under 22 U.S.C. 2244(d)(2)). Moreover, even if it were tolled for this period, Mr. Berube then

7  waited another 170 days after his second PRP was terminated on August 31, 2016, until February

8  21, 2017, to file his federal habeas corpus petition. Thus, there is no question that Mr. Berube's

9  federal habeas petition is untimely.

10  Mr. Berube does not argue that any of the grounds provided in 28 U.S.C. §

11  2244(d)(1)(A)-(D) operate to extend the one year statute of limitations. Thus, the only question is

12  whether Mr. Berube is entitled to equitable tolling of the statute of limitations for some period

13  such that his failure to timely file the instant petition may be excused. [2]

14  **B.    There is no Basis for Equitable Tolling**

15  The statute of limitations may be subject to equitable tolling if the petitioner shows that

16  "'(1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in

17  his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). A

18  simple "miscalculation" of the statutory deadline is not a sufficient basis for demonstrating

---

[2] Mr. Berube does not argue, nor is there any indication that United States Supreme Court recognized a relevant new constitutional right that the Supreme Court made retroactive to cases on collateral review such that this could serve as a basis for extending the statute. 28 U.S.C. § 2244(d)(1)(C). Mr. Berube was aware of the factual predicate of his claim prior to the conclusion of direct review (i.e. before the federal statute began to run) and there is no indication that additional facts related to this claim came to light thereafter such that the statute could be extended on that basis. 28 U.S.C. § 2244(d)(1)(D). Mr. Berube also does not specifically argue that he was impeded by State action from filing an application such that this could operate to extend the statute under 28 U.S.C. § 2244(d)(1)(B). However, to the extent his arguments with respect to equitable tolling, discussed below, can also be construed as arguing he was impeded from filing his federal habeas petition by State action, for the same reasons discussed below, the Court finds this does not serve as a basis to extend the statute.

REPORT AND RECOMMENDATION - 10

1  equitable tolling. *Id*. at 2564. To obtain equitable tolling, extraordinary circumstances beyond a
2  petitioner's control must have prevented the petitioner from filing a federal petition on time.
3  *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc); *Gaston v. Palmer*, 387
4  F.3d 1004, 1008 (9th Cir. 2004); *Laws v. Lamarque*, 351 F.3d 919, 923-24 (9th Cir. 2003).

5  Equitable tolling is appropriate only where external forces, rather than the petitioner's
6  lack of diligence, account for the failure to file a timely petition. *Miles v. Prunty*, 187 F.3d 1104,
7  1107 (9th Cir. 1999). The threshold necessary to obtain equitable tolling is very high, and the
8  petitioner bears a heavy burden to obtain tolling. *Miranda v. Castro*, 292 F.3d 1063, 1065-66
9  (9th Cir. 2002).

10  Mr. Berube asks the Court to equitably toll the statute for one reason: He did not receive
11  the Washington Supreme Court letter denying his request for an extension of time to request
12  review until the time to request review had expired. Because of this, he argues, he could not
13  exhaust the sole claim raised herein because he could not present the claim to the Washington
14  Supreme Court. However, the fact Mr. Berube could not present his habeas claim to the
15  Washington Supreme Court does not excuse his failure to timely file his federal habeas petition.
16  The timing of the Washington Supreme Court's notice, denying his request for extension of time,
17  did not make it "impossible" for him to file a timely habeas petition. Rather, Mr. Berube still had
18  74 days from the time his period to seek discretionary review from the Washington Supreme
19  Court expired, in which to file his federal habeas petition. Instead, Mr. Berube waited an
20  additional 146 days, attempted to file another PRP and then, when that PRP was dismissed as
21  untimely, waited yet another 170 days to file his federal habeas petition. Mr. Berube fails to
22  demonstrate that he has been pursuing his rights diligently, or that some extraordinary
23  circumstance beyond his control prevented timely filing. *Holland*, 130 S. Ct. at 2562.

Mr. Berube argues "though he theoretically could have still filed a federal habeas petition regardless of whether he properly exhausted his claims in state court, such action would have been futile, as the federal petition would have been dismissed." Dkt. 28. The argument is disingenuous. If Mr. Berube really believes his unexhausted habeas claim will be dismissed, he would not seek habeas relief. This is because his habeas claim was unexhausted by March 2015 when the Washington Supreme Court rejected discretionary review, and was unexhausted and procedurally defaulted by July 15, 2015, when Mr. Berube filed an untimely second PRP.[3] If it was "futile" to timely seek habeas relief in 2015, because cause and prejudice could not be shown and the claim should be dismissed, it is also futile to present the claim now.

But of course, Mr. Berube doesn't mean what he says when he claims the futility of timely filing a habeas petition in 2015, equitably excuses the untimely filing of the petition in 2017. Because if he did, he would be conceding the Court should dismiss the petition, timely or not, because the sole claim raised is unexhausted and procedurally defaulted.

Rather, what Mr. Berube really means is the Court should equitably toll the statute of

---

[3] RCW 10.73.090 provides, in relevant part, that "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." For the purposes of Washington state law, RCW 10.73.090, Mr. Berube's judgment became final on October 2, 2013, "the date the appellate court [issued] its mandate disposing of a timely direct appeal from the conviction." RCW 10.73.090; Dkt. 15, Exhibit 9, Exhibit 20. Thus, Mr. Berube was procedurally barred under RCW 10.73.090 from filing a second PRP after October 2, 2014. In fact, this was the basis for the denial of the second PRP Mr. Berube filed in July 2015. Dkt. 15, Exhibit 20, Order of Dismissal, *In re Berube*, Court of Appeals Cause No. 74185-3-I. Specifically, in dismissing Mr. Berube's second PRP, the Washington Court of Appeals held that "his conviction became final in October 2013" that RCW 10.73.090 requires a PRP to be filed within one year after the judgment and sentence becomes final and that, therefore, his July 2015 PRP was time barred as it was filed more than a year after Mr. Berube's judgment and sentence became final, there was no evidence his judgment and sentence was facially invalid and no exception under RCW 10.73.100 applied. Dkt. 15, Exhibit 20. The Washington Supreme Court denied Mr. Berube's request for discretionary review finding the petition was properly dismissed as untimely. *Id.*, Exhibit 22.

REPORT AND RECOMMENDATION - 12

limitations because there is cause and prejudice to excuse the procedural default that currently bars consideration of the claim. This argument is as disingenuous as the "futility" argument. Whether a claim is procedurally defaulted has nothing to do with the statute of limitations, and Mr. Berube presents no authority to the contrary. A federal habeas claim is procedurally defaulted when the petitioner fails to exhaust state remedies and is now procedurally barred from presenting the claim in the state courts. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). But presenting a defaulted claim is not a bar to **timely filing** a federal habeas petition. This is self-evident from the numerous cases in which a court considered defaulted claims contained in a timely filed habeas petition. *See e.g.*, *Owens v. Ryan*, No. 14-2443, 2016 WL 3387214, at * 2 (Dist. Arizona, June 20, 2017) ("The Court will also adopt the recommendation that Claim 14 is procedurally defaulted, but that Petitioner has established cause and prejudice to overcome the default. The Court finds Petitioner is entitled to relief on Claim 14. This Court will grant the writ as to this claim, which results in overturning the conviction and sentence on Count 7."); *Bean v. Tilton*, No 07-1764, 2009 WL 1699659, at * 9 (E.D.C.A. June 17, 2009) ("Even if the Court were to conclude that Penal Code section 1237.5 is an independent and adequate state bar, Bean has established cause and prejudice sufficient to overcome it.").

      Here, Mr. Berube could have, and should have timely filed his habeas petition in 2015. Although his habeas claim would have been unexhausted and defaulted, the federal habeas court would consider Mr. Berube's claim if he could establish cause and prejudice or actual innocence to overcome the procedural bar. *See Coleman*, 501 U.S. at 750, holding modified by *Martinez v. Ryan*, 566 U.S. 1, 132 (2012) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default

and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). But instead, Mr. Berube waited until long after the habeas statute of limitations lapsed, putting his claims out of the court's ability to review. Thus, there was no external force preventing Mr. Berube from filing a *timely* habeas petition and arguing, as he now does in the instant untimely habeas petition, that he shows cause and prejudice to overcome his procedural default. If the court determined Mr. Berube made a sufficient showing of cause and prejudice, it would have excused the procedural default and failure to exhaust and allowed him to proceed with those claims in his federal habeas petition.

The Court also notes that Mr. Berube also fails to demonstrate he has been pursuing his rights diligently. Despite having 74 days remaining on the statute in which to file his federal habeas petition, Mr. Berube waited 146 days, until July 15, 2015, before attempting to file a second untimely PRP. Then when the second PRP was ultimately dismissed as untimely and all subsequent motion practice concluded, on August 31, 2016, he waited yet another 170 days, until February 17, 2017, to file the instant federal habeas petition. Thus, even if the Court were to find a basis for tolling the statute from February 19, 2015, the date on which Mr. Berube's time to seek review of his first PRP at the Washington Supreme Court expired, to August 31, 2016, the date on which all motion practice challenging the dismissal of his second PRP concluded, Mr. Berube's federal habeas petition would still be untimely. *See Pace*, 544 U.S. at 419 (Finding lack of due diligence precluded equitable tolling where petitioner not only sat on his rights for years before filing a request for state collateral review but then sat on them for five more months after his state collateral review proceeding became final before deciding to seek relief in federal

REPORT AND RECOMMENDATION - 14

court.). Mr. Berube gives no valid justification for these lengthy delays and his "lack of diligence [also] precludes equity's operation." *Id.*

In sum, the failure to file a timely federal petition was due solely to the fact that Mr. Berube did not file his petition within the required time period. External factors did not prevent him from filing the petition in a timely manner. Even if Mr. Berube miscalculated the deadlines for expiration of the statute of limitations, or was under the misapprehension that his petition raised an unexausted claim subject to possible dismissal, this does not show a basis for equitable tolling. Nor has Mr. Berube shown diligence in pursuing his rights as required for equity to intervene. Thus, as Mr. Berube has failed to establish the statute of limitations was equitably tolled, the Court need not reach the question of whether he establishes cause or prejudice to overcome the procedural default. Furthermore, because Mr. Berube's petition is time-barred, his petition should be denied without reaching the merits of his claims.

**C.     Cause and Prejudice**

Even if the Court found the habeas petition is timely, for equitable reasons, Mr. Berube has failed to show cause and prejudice to excuse his defaulted claim. Assuming Mr. Berube's argument about the timing of the Washington Supreme Court notice constitutes good cause, he fails to establish prejudice to excuse the procedural bar and default of his claim. In order to establish prejudice to overcome a procedural default, Mr. Berube must establish "actual prejudice as a result of the alleged violation of federal law," or that the Court's "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "Prejudice" in the habeas context means actual, objective harm resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 170 (1982) (a habeas petitioner "shoulder[s] the burden of showing, not merely that the errors ... created a *possibility* of prejudice, but that they

worked to his *actual* and substantial disadvantage" and infected the state proceedings with errors of constitutional dimension) (emphasis in original.) A fundamental miscarriage of justice may occur where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (holding that the merits of a defaulted claim could be reached "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent ...").

Here, Mr. Berube argues that he has a constitutional claim in that "[t]he trial court's refusal to allow Berube to speak at the hearing reconstructing his trial testimony deprived Berube of due process." Dkt. 8, at 5. Mr. Berube contends he is entitled to have his conviction reviewed upon a record which has been settled in accordance with procedural due process. Dkt. 28, at 11. However, having a cognizable constitutional claim in and of itself is not sufficient to establish actual, objective harm, i.e. prejudice, resulting from the state court's alleged error. In fact, in dismissing Mr. Berube's first PRP, the Washington Court of Appeals addressed the issue of whether Mr. Berube had established any prejudice from this alleged due process violation. Specifically, the Court noted Mr. Berube,

> does not claim, nor does it appear, the absence of a complete transcript impeded appellate review of any of his claims of error … And beyond vaguely asserting that the description of his testimony was slanted in favor of the State, Berube fails to describe how the narrative report of proceedings misrepresented his testimony. Berube fails to identify any prejudice resulting from the absence of a portion of his trial record.

Dkt. 12, at 2. Similarly, here, beyond asserting a violation of his due process rights, Mr. Berube also does not argue or establish that the alleged violation in some way affected his conviction or appeal such that he was prejudiced. As such, Mr. Berube fails to carry his burden of establishing

that the alleged violation of federal law created more than a mere possibility of prejudice but, in fact, worked to his actual and substantial disadvantage.

### D. Evidentiary Hearing

The decision to hold a hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 536 U.S. 170, 181, 131 S.Ct. 1388 (2011). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474.

The timeliness of Mr. Berube's claims can be determined from the state court record and therefore, no evidentiary hearing is necessary.

### E. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Mr. Berube is not entitled to a certificate of appealability in this matter.

REPORT AND RECOMMENDATION - 17

## CONCLUSION

For the foregoing reasons, this Court recommends that Mr. Berube's federal habeas petition be dismissed with prejudice pursuant to 28 U.S.C. § 2244(d)(1). The Court further recommends that a certificate of appealability be denied. A proposed order and judgment accompany this Report and Recommendation

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 30, 2018.** The Clerk should note the matter for **May 4, 2018**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 12 pages. The failure to timely object may affect the right to appeal.

DATED this 6th day of April, 2018.

BRIAN A. TSUCHIDA
United States Magistrate Judge